IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:06-cr-264 |
| | ) | |
| LAMONT E. McCORD, | ) | CIVIL NO. 3:20-cv-421 |
| | ) | |
| Defendant. | ) | |

**Government's Response in Opposition to Defendant's Petition for
Habeas Relief Under *Rehaif v. United States***

The defendant has filed a habeas petition under 28 U.S.C. § 2255 arguing that his

conviction for possessing a firearm while a convicted felon is defective in light of *Rehaif v.

United States*, 139 S. Ct. 2191 (2019).  He also alleges that he received ineffective assistance of

counsel due to his counsel's asserted conflict of interest and failure to challenge the

government's purported breach of his plea agreement.  (ECF Nos. 32–33.)

The defendant cannot make either the actual-innocence or cause-and-prejudice showing

necessary to reach the merits of his procedurally defaulted *Rehaif* claim.  His ineffectiveness

claim is also unavailing.  The Court should therefore deny the petition.

**Factual and Procedural Background**

On July 20, 2006, the defendant was charged by criminal complaint with one count of

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  (ECF No. 1.)  On

August 2, 2006, a grand jury sitting in the Eastern District of Virginia indicted the defendant for

this offense.  (ECF No. 8.)  On September 21, 2006, the defendant appeared before District

Judge Richard L. Williams and pleaded guilty.  (ECF Nos. 18–20.)

According to the Statement of Facts submitted as part of the plea proceedings, three law

enforcement officers observed the defendant enter a convenience store in Richmond, Virginia,

while wearing an "'all-white,' 'nice,' 'ENYCE' outfit." (ECF No. 20 ¶ 3.) Earlier that day, several witnesses had identified a man matching this description as having been involved with drug trafficking and violent robberies in that area of south Richmond. (*Id*. ¶ 2.)

The officers entered the same convenience store and introduced themselves to the defendant. (*Id*. ¶ 4.) They asked if he was in possession of any firearms, and the defendant "notably hesitated before responding, 'no.'" (*Id*. ¶ 5.) The defendant also appeared to be under the influence of narcotics. (*Id*.) His speech was "slow" and his eyes were "partially closed." (*Id.*) The officers advised the defendant that they were going to conduct a pat down for weapons. (*Id.*) He did not object or otherwise try to leave. (*Id.*)

In patting down the defendant, the officers found a 9mm handgun tucked in his waistband. (*Id*. ¶ 6.) The officers arrested the defendant after confirming that he had "several felony convictions punishable by imprisonment of one year or more, to include a June 16, 2005 conviction for of [sic] Possession of Cocaine with Intent to Distribute in the Circuit Court of the City of Richmond." (*Id*. ¶ 7.)

Critically for present purposes, the defendant agreed in the Statement of Facts that his conduct was done "unlawfully, knowingly, and willfully, and without legal justification or excuse with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason." (*Id*. ¶ 10.) The Court accepted the defendant's guilty plea and, in February 2007, imposed a sentence of 96 months' incarceration. (ECF Nos. 24-25.)

In January 2007, the defendant was separately indicted by a grand jury sitting in the Eastern District of Virginia for conspiracy to distribute illegal narcotics, in violation of 21 U.S.C. § 846; use and carry of a firearm during a drug trafficking crime causing the death of another, in violation of 18 U.S.C. § 924(j); and conspiracy to use and carry firearms, in violation of 18 U.S.C. § 924(o). In December 2007, the defendant was cumulatively sentenced to

2

600 months' incarceration for these offenses. (Case No. 3:06-cr-387, ECF No. 78.)

The defendant filed his *pro se* habeas petition in June 2020. (ECF Nos. 32–33.) The primary argument in the petition is that the defendant's § 922(g) conviction is invalid under *Rehaif*. There, the Supreme Court held that § 922 does not criminalize a defendant's "innocent mistake" and that a conviction under § 922(g) therefore requires "knowledge of [the] status" that renders firearm possession unlawful. 139 S. Ct. at 2197; *see also id.* at 2198 (explaining that § 922(g) does not criminalize possession of a firearm by a convicted felon who was "sentenced only to probation … [and] who [did] not know that the crime [was] 'punishable by imprisonment for a term exceeding one year'"). The defendant's habeas petition argues *Rehaif* rendered his indictment, conviction, and plea agreement defective because the government did not prove that he knew he "belonged to a prohibited person category." (ECF No. 33 at 2–3.)

The defendant also briefly argues that he received ineffective assistance of counsel because his lawyer had a conflict of interest and failed to challenge the government's purported breach of his plea agreement. (ECF No. 33 at 3–4.)

## Argument

For the reasons appearing below, the Court should deny the habeas petition.

## I.   The record now includes more evidence of the defendant's knowledge of his prohibited status.

On August 14, 2020, the Court granted the government's motion to expand the record under Rule 7 of the Rules Governing § 2255 Proceedings. More specifically, the Court expanded the record to include a written notification by "Virginia Probation and Parole, District One" regarding "Firearms and Ammunition," which was signed by the defendant on August 1, 1994. (ECF No. 39-1.) The document unequivocally sets forth that it is unlawful to purchase, carry, own, or possess firearms or ammunition for "any person convicted of a crime, punishable

by imprisonment, for a term exceeding one year, whether or not such sentence was imposed or served."  (*Id.*)  It goes on to say that the defendant, as a felon, "thoroughly" understands that he "cannot purchase, carry, own or possess firearms or ammunition."  (*Id.*)

For the reasons set forth below, the record here more than establishes that the defendant was aware of his status as a felon.  That knowledge, in turn, forecloses his *Rehaif* claim.

## II.    The defendant cannot overcome his procedural default on his *Rehaif* claim.

As an initial matter, the government accepts that *Rehaif* is retroactive on collateral review.  *Rehaif* altered the elements that must be proven to sustain a conviction under § 922(g), meaning that *Rehaif* narrowed the "class of persons that the law punishes."  *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016) (applying retroactivity principles under *Teague v. Lane*, 489 U.S. 288 (1989)).  The Supreme Court has previously recognized that a defendant may bring a habeas petition challenging his conviction in similar circumstances.  *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 346 (1974) (holding that a habeas petition is cognizable when, based on a change in the law subsequent to his conviction, a defendant claims that his "conviction and punishment are for an act that the law does not make criminal").

Even so, by not raising his constitutional attack on his § 922(g) conviction before that conviction became final, the defendant procedurally defaulted it.  *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012).  That default "may be excused in two circumstances:  where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom."  *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S. at 621).  The defendant cannot satisfy either standard.

### A.    The defendant cannot demonstrate actual innocence.

To begin, the defendant is not actually innocent of violating § 922(g).  "To establish

4

actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

The defendant cannot make this showing. Record evidence indicates that the defendant was aware that he was a felon at the time he unlawfully possessed the firearm giving rise to his § 922(g) conviction. That is sufficient to defeat a *Rehaif* claim. *See Rehaif*, 139 S. Ct. at 2200 (holding only that the government has to prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm"). *Rehaif* nowhere held that the government has to prove the defendant's knowledge of the unlawfulness of possessing a firearm as a convicted felon, a burden normally reserved for statutes requiring proof of "willfulness." *Cheek v. United States*, 498 U.S. 192, 199 (1991). Thus, even after *Rehaif*, a § 922(g) conviction does not require knowledge of the unlawfulness of a possessing a firearm as a convicted felon, but instead only knowledge that one *is* a felon. *See, e.g.*, *United States v. Maez*, 960 F.3d 949, 954 (7th Cir. 2020) ("We do not read *Rehaif* as imposing a willfulness requirement on § 922(g) prosecutions."); *United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019) (*Rehaif* requires that a defendant "know only that he had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time he possessed the firearms"); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) ("*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code.").

Here, the record demonstrates that the defendant was aware of his prohibited status.

*First*, the defendant endorsed the Statement of Facts, which specified that the "acts" taken by the defendant were done "unlawfully, knowingly, and willfully, and without legal

justification or excuse with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason." (ECF No. 20 ¶ 10.) These "acts" include the agreed fact that the defendant had "several felony convictions punishable by imprisonment of one year or more" and that he nevertheless possessed a "Sturm Ruger & Company, Model P95DC, 9mm semiautomatic pistol." (*Id.* at ¶¶ 7-8, 11.) Beyond the assertion of willfulness in the statement of facts, the PSR indicates that the defendant "freely admitted his guilt in court" and "admitted to the criminal conduct as outlined in his written Statement of Facts" when interviewed by his probation officer. (PSR ¶ 12.)

Indeed, given the admissions in his Statement of Facts, the defendant's argument is barred by *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005). There, the Fourth Circuit stated stated that, absent "extraordinary circumstances … allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false,'" such that "a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22 (internal citations omitted).

Here, the defendant admitted that he acted "with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason." (ECF No. 20 ¶ 10.) To act with "specific intent" to violate the law, the defendant must have possessed the firearm with the "purpose or desire" to violate § 922(g). *Oxygene v. Lynch*, 813 F.3d 541, 548–49 (4th Cir. 2016) (describing "specific intent … as akin to purpose or desire, rather than mere knowledge"); *accord* Black's Law Dictionary (11th ed. 2019) (defining "specific intent" as "[t]he intent to accomplish the precise criminal act that one is later charged with"). This agreed-upon concession destroys any *Rehaif* claim. The defendant cannot have been ignorant of his status as

a convicted felon if he acted with specific intent to violate the statutory prohibition on convicted felons possessing firearms.  Accordingly, under *Lemaster*, the Court should dismiss the defendant's *Rehaif* claim.

*Second*, the recitation of facts in the PSR indicates that this was not the defendant's first conviction for being a felon in possession of a firearm.  On June 21, 1995, he was convicted by the Richmond Circuit Court for carrying a firearm after having been convicted of a felony. (*Id.* ¶ 12.)  Thus, when the defendant was arrested in July 2006, and was again in possession of a firearm, he was aware of his prohibited status by virtue of his previous arrest and state conviction for the same offense.

*Third,* the record in this case demonstrates that the defendant was aware of the prohibition on convicted felons possessing firearms.  That, too, makes it impossible for him to prove his actual innocence.  The defendant signed an express acknowledgment in 1994 that he was not eligible to "purchase, carry, own or possess firearms or ammunition."  (ECF No. 39-1.) While *Rehaif* does not require such knowledge, where a defendant is aware of the felon-in-possession ban that fact makes it impossible for him to prove his actual innocence.  *See United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) (holding, on plain-error review, that prior "admonitions [about felon-in-possession limitations] would have made [the defendant] aware not only of his status, but also of the criminal prohibition against his possessing a firearm because of his status, more than is required to prove the *Rehaif* element").

*Fourth,* the defendant's state record as documented in the PSR demonstrates that the defendant was aware of his prohibited status.  The Court found his criminal history category to be VI—the highest under the Sentencing Guidelines.  (PSR ¶ 84.)  Indeed, prior to his July 2006 arrest for this case, he had been convicted of at least six felonies by the Commonwealth of Virginia.  (*Id.* at ¶¶ 16, 22, 24.)  More specifically:

- In June 1992, he was convicted of felony possession of cocaine, and sentenced to 10 years with 7 years suspended. (*Id.* ¶ 16.)

- In December 1992, he was convicted of felony possession of cocaine as well as possession with intent to distribute cocaine. He received sentences of 5 years for both offenses, all of which was initially suspended. (*Id.* ¶ 22.)

- In June 1995, he was convicted of possession of cocaine with intent to distribute, possession of cocaine and a firearm, and possession of a firearm by a convicted felon. He was sentenced to 13 years, with 8 years suspended, for the distribution offense; 3 years for the possession of cocaine and a firearm; and 5 years, all suspended, for possessing a firearm as a convicted felon. (*Id.* at 24.)

Separate and apart from the sentences imposed for his prior felonies, the defendant had served substantial time in prison at the time of his arrest for the instant offense. Specifically, as a result of the three felony convictions in 1992, the PSR indicates that the defendant was incarcerated from April 1993 to July 1994. (*Id.* ¶ 16.) The defendant therefore served a sentence in excess of one year as a result of his first three state felony convictions. Furthermore, as a result of the felony convictions in 1995, the PSR says that the defendant was incarcerated from December 1994 to March 2001. (*Id.* ¶¶ 16, 22, 24.) This was a lengthy sentence of more than six years.

These prior periods of incarceration are incompatible with the defendant's current *Rehaif* claim, as they render wholly implausible the assertion that he was unaware that he had been convicted of a crime punishable by more than one year in prison. *See, e.g.*, *United States v. Raymore*, 965 F.3d 475, 486 (6th Cir. 2020) (holding defendant could not show plain error after a jury trial in light of past felony convictions, including for being a felon-in-possession); *United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020) stating that "there is little possibility that [a defendant] was ignorant of his status as a convicted felon" when he had previously been convicted of a felony sex offense and received a two-year suspended sentence); *United States v. Miller*, 954 F.3d 551, 560 (2d Cir. 2020) ("The PSR shows that Mack's prior conviction, for the

unlawful theft and alteration of a firearm, resulted in a total effective sentence of ten years'
imprisonment, with execution suspended after three years, which removes any doubt that Mack
was aware of his membership in § 922(g)(1)'s class."); *United States v. Reed*, 941 F.3d 1018,
1022 (11th Cir. 2019) (holding that defendant could not show plain error necessary to vacate his
guilty plea where the PSR indicated that he "had served a minimum of 18 years in prison before
being arrested for possessing the firearm"); *United States v. Hollingshed*, 940 F.3d 410, 416
(8th Cir. 2019), *cert. denied*, 140 S. Ct. 2545 (Mar. 23, 2020) (defendant could not show *Rehaif*
error in light of having served a four-year prison sentence).

To be sure, there could be a defendant who, due to the unusual procedural posture of his
case or the idiosyncratic nature of his sentence, might not have been aware that his underlying
conviction was for a felony offense. *Rehaif* itself recognized as much. *See* 139 S. Ct. at 2198
(explaining that § 922(g) should not be read to criminalize gun possession where "a person …
was convicted of a prior crime but sentenced only to probation … [and] does not know that the
crime is '*punishable* by imprisonment for a term exceeding one year'" (quoting 18 U.S.C.
§ 922(g)(1)).  But that is not this case, because here, the record indicates that the defendant was
aware that he had previously convicted of a crime punishable by more than one year of
incarceration.  *See, e.g.*, *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020) (explaining
that someone who spent more than ten years in prison for a prior offense could not "plausibly
argue that he did not know his conviction had a maximum punishment exceeding a year");
*United States v. Mayo*, No. 4:12-cr-32-3 (JLK), 2020 WL 2476167, at *2 (W.D. Va. May 13,
2020) (holding that a defendant asserting a *Rehaif* claim had not made a viable claim of actual
innocence where he "made no argument that he did not commit the crime alleged, and the record
is devoid of any facts to support such an argument").

In sum, the defendant cannot make an actual-innocence showing on this record.

9

**B.     The defendant cannot show cause for his default.**

The defendant also cannot show cause for his default.

One way to establish cause would be to argue that *Rehaif* was so novel that no reasonable litigant would have thought to challenge a § 922(g) conviction on the grounds that knowledge of one's prohibited status was an element of the offense.  For instance, the defendant says in his pleading that he did not raise this argument because "the Supreme Court decision in *Rehaif* … didn't exist then."  (ECF No. 33 at 2.)  But the Supreme Court has already explained that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  To the extent that an exception to this rule exists for truly novel claims, *see Reed v. Ross*, 468 U.S. 1, 16–17 (1984), that exception is too narrow to accommodate the defendant's case.

In determining whether a claim is novel enough to establish cause for a procedural default, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all."  *Smith v. Murray*, 477 U.S. 527, 537 (1986).  Any novelty argument here is incompatible with both *Bousley* and binding Circuit precedent.  In *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001), for example, the Fourth Circuit concluded that an *Apprendi* claim was not novel enough to excuse a procedural default, favorably citing a Seventh Circuit case reaching the same conclusion as to a defendant sentenced in 1992, a full eight years before *Apprendi* was decided.  *Id.* at 145–46 (citing *United States v. Smith*, 241 F.3d 546 (7th Cir. 2001)).  *Sanders* cautioned that liberally construing arguments as novel enough to satisfy the cause-and-prejudice exception to procedural default would threaten to a create a world in which "[c]ollateral review would come … to serve as an all-purposive receptacle for claims which in hindsight appear more

10

promising than they did at the time of trial." *Id.* at 146.

The same reasoning applies here.  Had the defendant wanted to raise a *Rehaif*-type claim about his § 922(g) conviction, he was entirely capable of doing so—just like a defendant who wanted to raise an *Apprendi*-style claim in 1992.  *Accord Dugger v. Adams*, 489 U.S. 401, 409–10 (1989) (concluding that a claim was not novel where "the legal basis for a challenge was plainly available"); *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) ("If the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." (citation and internal quotation marks omitted)).  And indeed, the Fourth Circuit had previously rejected a *Rehaif*-type claim in 1978, underscoring that the interpretation of § 922(g) proffered by the defendant in *Rehaif* was not novel at all.  *See United States v. Williams*, 588 F.2d 92, 92–93 (4th Cir. 1978) (per curiam).  Consistent with *Sanders*, the defendant's failure to raise such a claim earlier is therefore not excusable on novelty grounds.  *See Mayo*, 2020 WL 2476167, at *2 ("Given the plethora of challenges levied against § 922(g), Petitioner's claim does not qualify as novel." (citing *Williams* and other circuit-level cases)).

Another way to establish cause for a procedural default would be to show that defense counsel performed deficiently by failing to raise a particular claim.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The defendant makes a similar suggestion as "ground four" in his *pro se* motion to the court.  (ECF No. 23 at 3.)  This argument cannot overcome his procedural default.  The general rule is that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient."  *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996); *see also United States v. Dyess*, 730 F.3d 354, 363 (4th Cir. 2013) (holding that a defense attorney's failure to anticipate *Apprendi* did not constitute deficient performance).  That principle applies equally to *Rehaif* claims.  *See United States v. Finley*, 805 F. App'x 823, 827 (11th Cir. 2020)

(rejecting *Rehaif*-based ineffectiveness claim because "precedent clearly forecloses an ineffective-assistance-of-counsel claim based on failure to raise an objection that would not succeed under current law, but which could succeed depending on a forthcoming Supreme Court decision"); *United States v. Sumlin*, No. 18-CR-682 (SHS), 2020 WL 3318207, at *5 (S.D.N.Y. June 18, 2020 ("[A]n attorney is not required to forecast changes or advances in the law in order to provide effective assistance." (quoting *United States v. Kimber*, 777 F.3d 553, 563 (2d Cir. 2015))).

## C.     The defendant cannot show prejudice resulting from his default.

Even if the defendant could establish cause for his procedural default based on *Rehaif*'s purported novelty, he still cannot show prejudice.

When a defendant has "not attempt[ed] to withdraw his guilty plea in the district court, [the Fourth Circuit] review[s] his plea challenge for plain error."  *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc) (citing *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018)).  A defendant satisfies the plain-error standard by demonstrating "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018).  On collateral review, the prejudice standard is more exacting still.  *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting "use of the 'plain error' standard to review [a] § 2255 motion" and stating "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"); *accord United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994) ("hold[ing] that the *Frady* cause and prejudice standard applies to … collateral challenges to unappealed guilty pleas").

When raising a forfeited attack on a guilty plea, a defendant can only demonstrate that an error affected his substantial rights (or establish prejudice on collateral review) by "show[ing] a

reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).  A defendant must satisfy this standard even if he establishes that the district court committed an error in his plea colloquy.  *See, e.g.*, *United States v. Cannady*, 283 F.3d 641, 647–48 (4th Cir. 2002).  Here, the defendant cannot make the requisite showing.

The evidence of the defendant's knowledge of his prohibited status was overwhelming. As explained above, that evidence included (i) multiple prior felony convictions for very serious state crimes; (ii) the fact that he served substantial prison time (more than seven years) on his state convictions, thereby making plain that those offenses were punishable by more than one year of incarceration; (iii) the fact that the defendant had been previously convicted of a state felon-in-possession offense before committing his federal § 922(g) offense and had signed a document putting him on notice of the felon-in-possession prohibition in § 922(g)(1); and (iv) the Statement of Facts, in which the defendant agreed that he acted willfully and with specific intent to violate the law.

Because the government clearly would have been able to prove the defendant's knowledge of his prohibited status, the defendant's decision whether or not to plead guilty would not have been affected by the new rule announced by *Rehaif*.  He thus cannot show prejudice sufficient to overcome his procedural default.  As the Fifth Circuit has explained:

> Demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason:  Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew. So it is hard to imagine how their conviction or guilty plea was prejudiced by any error under *Rehaif*.

*United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020); *see also, e.g.*, *United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020) ("Had the government been required to prove that Bates knew he was a felon at the time he possessed a firearm, there is overwhelming evidence to

show that it would have easily done so…. Had Bates known that the government needed to prove that he knew he was a felon, the probability is virtually zero that it would have changed his decision to plead guilty.").

Indeed, the Eleventh Circuit has specifically addressed how a prior conviction for being a felon-in-possession vitiates a *Rehaif* claim.  The defendant here pleaded guilty in Richmond Circuit Court to possessing a firearm as a convicted felon in June of 1995.  (PSR ¶ 24.)  As the Eleventh Circuit put it when holding that two defendants could not establish plain error under *Rehaif* on direct appeal:

> [B]oth Appellants were previously convicted of violating 18 U.S.C § 922(g), the very statute at issue here.  Moore and Miller were sentenced to 92 and 57 months, respectively, for those convictions.  Remarkably, Moore even bears a tattoo of the number 92 on his left arm, representing the length of his previous sentence.  It is also telling that both Appellants stipulated to their prior felonies, presumably to keep the jury from hearing any details of those convictions.  Thus, the record clearly establishes that both Appellants knew they were felons.

*United States v. Moore*, 954 F.3d 1322, 1337–38 (11th Cir. 2020).  Here, as in *Moore*, the defendant's prior conviction for a firearms offense establishes that he knew not just of his own prohibited status, but of the unlawfulness of his conduct in possessing a firearm.  That fact alone forecloses his *Rehaif* claim.

The defendant may argue in reply that this Court, in conducting its prejudice analysis, should consider only the evidence introduced at trial and should not consider, for example, evidence in the PSR or elsewhere that bears on the defendant's knowledge of his prohibited status.  With respect to cases on direct appeal, at least five circuits have disagreed in the context of plain-error review.  *See United States v. Owens*, 966 F.3d 700, 706-07 (8th Cir. 2020) ("The full record shows that the government could have offered reliable evidence of Owens's criminal history at trial if it had been relevant under the prevailing law."); *United States v. Johnson*, 963 F.3d 847, 852 (9th Cir. 2020) (holding that it is permissible to "review the entire record on

appeal—not just the record adduced at trial—in assessing whether [a defendant] has satisfied the fourth prong of plain-error review"); *United States v. Staggers*, 961 F.3d 745, 756 (5th Cir. 2020) (concluding that, in light of extra-record evidence, "the district court's error [did] not significantly affect the fairness, integrity, or public reputation of judicial proceedings, so we will not exercise our discretion to correct it"); *United States v. Maez*, 960 F.3d 949, 959–63 (7th Cir. 2020) (holding that, in light of extra-record evidence, the defendant could not show prejudice sufficient to satisfy the third-prong of plain-error review and also failed on the fourth prong of plain-error review); *United States v. Miller*, 954 F.3d 551, 559–60 (2d Cir. 2020) ("We will not penalize the government for its failure to introduce evidence that it had but that, prior to *Rehaif*, it would have been precluded from introducing.") (explaining that denying relief did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings"). Given that the cause-and-prejudice standard is more exacting than plain-error review, *see Frady*, 456 U.S. at 166, it follows *a fortiori* that this Court can consider such evidence in a habeas proceeding.

This is not to say that no defendant will ever be able to establish *Rehaif* prejudice. For example, the Seventh Circuit has held that in a prosecution for possessing a firearm after having been convicted of a crime of domestic violence under 18 U.S.C. § 922(g)(9), a defendant could show plain error on direct appeal where the defendant did not have a lawyer in state court, the state charging instrument cited a non-existent statute, and the guilty-plea questionnaire was "incomplete and unclear." *United States v. Triggs*, 963 F.3d 710, 716 (7th Cir. 2020). But any similar concerns are absent here. The defendant therefore cannot establish prejudice sufficient to escape his procedural default.

## III.   Any *Rehaif* error was harmless.

In addition, any *Rehaif* error here was harmless.

Once direct review is completed, "a presumption of finality and legality attaches to the

conviction and sentence," *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (citation omitted),

and courts are "entitled to presume" that the defendant's conviction and sentence are lawful,

*United States v. Frady*, 456 U.S. 152, 164 (1982).  That "presumption of regularity ... makes it

appropriate to assign a proof burden to the defendant" on collateral review.  *Parke v. Raley*,

506 U.S. 20, 31 (1992); *see Hawk v. Olson*, 326 U.S. 271, 279 (1945) (explaining that a prisoner

necessarily "carries the burden in a collateral attack on a judgment").

   The Fourth Circuit and other courts have agreed that a defendant carries the burden of

showing a constitutional violation.  *See, e.g.*, *United States v. Pettiford*, 612 F.3d 270, 277

(4th Cir. 2010) ("[T]he district court must determine whether the [§ 2255 movant] has met his

burden of showing that this sentence is unlawful on one of the specified grounds."); *Miller v.

United States*, 261 F.2d 546, 547 (4th Cir. 1958) ("Because the proceeding under 28 U.S.C.

§ 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon

the petitioner to establish by a preponderance of evidence that he did not intelligently waive his

right to assistance of counsel."); *accord United States v. Brown*, 957 F.3d 679, 690 (6th Cir.

2020) ("A petitioner bears the burden of proof in a § 2255 proceeding ….").

   An error is harmless on collateral review unless it had a "substantial and injurious effect"

on the defendant's conviction.  *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *accord

Barnes v. Thomas*, 938 F.3d 526, 533 n.3 (4th Cir. 2019) (explaining that the *Brecht* standard is a

"'less onerous harmless-error standard' than the requirement on direct appeal that an error be

proven 'harmless beyond a reasonable doubt'" (quoting *Brecht*, 507 U.S. at 623)); *cf. Davis v.

Ayala*, 135 S. Ct. 2187, 2197 (2015) ("In a collateral proceeding, the test is different.  For

reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief

based on trial error unless they can establish that it resulted in 'actual prejudice.'" (quoting

*Brecht*, 507 U.S. at 637; *United States v. Lane*, 474 U.S. 438, 449 (1986))).

The defendant here cannot meet his burden to show that any *Rehaif* error had a "substantial and injurious effect" on his proceedings. As discussed above, ample facts demonstrate the defendant's knowledge of his felon status. Proof of such knowledge forecloses any meritorious *Rehaif* claim.

**IV.    Any error here, even if structural, does not require automatic *vacatur* of the defendant's guilty plea.**

The government notes that in *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), the Fourth Circuit recently held that failure to advise a defendant facing a felon-in-possession charge during a plea colloquy of the requirement to prove awareness of his prohibited status, as required by *Rehaif*, was a structural error requiring *vacatur* of the plea, even on plain-error review. *See Gary*, 954 F.3d at 202–03. *Gary* does not, however, require the grant of habeas relief on collateral review.

The United States unsuccessfully sought rehearing en banc in *Gary* and agrees with the increasing number of courts of appeals that have expressly rejected *Gary* since it was decided. *See United States v. Gary*, 963 F.3d 420, 420 (Wilkinson, J., concurring in denial of rehearing en banc) ("I concur in the denial of rehearing en banc for one reason and one reason only. The panel's holding is so incorrect and on an issue of such importance that I think the Supreme Court should consider it promptly."); *accord United States v. Coleman*, 961 F.3d 1024, 1029 (8th Cir. 2020) (holding that a *Rehaif* error in plea proceedings is not structural because it "does not defy harmless-error standards and the resulting harm is not indeterminate"); *United States v. Trujillo*, 60 F.3d 1196, 1205 (10th Cir. 2020) ("[W]e are not persuaded we should expand the limited number of structural errors to include those in which a district court fails to inform a defendant of the knowledge-of-status element of a felon in possession charge under 18 U.S.C. § 922(g)(1)."); *United States v. Hicks*, 958 F.3d 399, 401 (5th Cir. 2020) ("[W]e have not

considered *Rehaif* errors to warrant automatic reversal.").[1]

But even accepting that *Gary* is binding in this Circuit for *Rehaif* claims raised on direct appeal, *Gary* nonetheless has important limitations on its scope.  *Gary* did not purport to address how structural errors are treated on collateral review.  But when a defendant has procedurally defaulted a claim of structural error, the defendant must show actual prejudice, either to satisfy the cause-and-prejudice standard or to demonstrate that the error was not harmless.  *See, e.g.*, *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) ("[P]etitioners must show actual prejudice to excuse their default, even if the error is structural." (citing *Francis v. Henderson*, 425 U.S. 536, 542 n.6 (1976); *Davis v. United States*, 411 U.S. 233, 245 (1973)); *Hunt v. Houston*, 563 F.3d 695, 704 n.2 (8th Cir. 2009) ("[A] finding of structural error does not obviate a petitioner's obligation to show prejudice when attempting to overcome a state procedural default."); *Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005) ("[E]ven structural errors are subject to state procedural bars."); *Ward v. Hinsley*, 377 F.3d 719, 725–26 (7th Cir. 2004) ("[T]he procedural default doctrine does not seek to distinguish claims of trial error from claims of structural error.").

One court of appeals has stated that, when a defendant has a claim of structural error, such a claim obviates the need to show prejudice on collateral review.  *See Owens v. United States*, 483 F.3d 48, 65–66 (1st Cir. 2007).  But the Supreme Court expressly abrogated *Owens*

---

[1] The Eleventh Circuit has rejected *Gary*'s reasoning without expressly citing it.  *See United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020) ("Bates cannot credibly contend that he would have changed his decision to plead guilty and, instead, have opted for the government to prove that he knew he was a felon by offering evidence related to all seven of his prior convictions.") (declining to find plain error where defendant raised a forfeited *Rehaif* attack on his guilty plea on direct appeal).

The Sixth Circuit held, pre-*Rehaif*, that constitutional defects in plea proceedings are not necessarily structural.  *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 410–11 (6th Cir. 2009) (assessing such an error under the *Brecht* harmlessness standard).

in *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017). *Weaver* explained that the type of error addressed by *Owens*—a denial of a defendant's right to a public trial—does not necessarily "render[] a trial fundamentally unfair in every case." 137 S. Ct. at 1910. *Weaver* went on to hold that the defendant there had not shown sufficient prejudice in the context of an ineffective assistance of counsel claim to justify habeas relief. In doing so, *Weaver* distinguished structural errors raised on direct appeal from those raised for the first time in a collateral attack. As *Weaver* explained, when structural errors are reversed on direct appeal, "there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost." *Id*. at 1912. But when such claims are raised in collateral review, "the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases." *Id.* The Supreme Court's rejection of the First Circuit's approach to prejudice in a case involving structural error cautions against extending *Gary*'s logic to defaulted *Rehaif* claims raised for the first time on collateral review.

Indeed, even on direct appeal, the Supreme Court has made clear that structural errors do not require automatic *vacatur* on plain-error review. In *United States v. Cotton*, 535 U.S. 625 (2002), for example, the Supreme Court considered how to evaluate a forfeited *Apprendi* claim on plain-error review where the indictment failed to charge a required drug weight. Even assuming that the charging error was structural, *Cotton* held that the defendant's conviction remained valid because the evidence of drug weight at trial was "overwhelming." *Id.* at 622–23. For that reason, failing to correct the *Apprendi* error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* The same reasoning applies with even more force on collateral review, where the defendant must show more than plain error to obtain relief. *See Frady*, 456 U.S. at 166. Cases holding that, on direct appeal, courts may consider evidence outside the record in conducting a plain-error assessment reinforce the

conclusion that a *Rehaif* error should not result in automatic habeas relief.  *See supra* Part II

(citing *Owens*, 2020 WL 3980243, at *3; *Johnson*, 963 F.3d at 852; *Staggers*, 961 F.3d at 756;

*Maez*, 960 F.3d at 959–63; *Miller*, 954 F.3d at 559 n.23).

 Here, of course, the evidence of defendant's knowledge of his prohibited status is strong.

His signed an express acknowledgement of his prohibited status as a felon.  At the time of his

arrest, the defendant had been convicted of no fewer than six prior state felonies.  As noted

above, the Court in sentencing the defendant found that his criminal history category was VI—

the highest under the Sentencing Guidelines.  As a result of these convictions, he had been

incarcerated for more than seven years at the time of his arrest for the instant offense.  If all this

were not enough, he agreed in the Statement of Facts that he violated the law willfully and with

specific intent.  It strains credulity to suggest that he was not aware of his prohibited status as a

felon in light of the full record.

 The defendant's procedural default therefore remains fatal to his habeas claim.

## V. There was no fatal defect in the defendant's indictment.

 In his *pro se* filing, the defendant also argues that his indictment is "invalid" because the

"government didn't provide the grand jury with all the elements required to adequately bring a

charge of 922(g)."  (ECF No. 32 at 4.)  The Court could construe this argument as a contention

that procedural-default rules do not apply here because district courts lack jurisdiction to

adjudicate criminal charges where a required element is missing from the indictment.

 That is wrong.  The Supreme Court long ago addressed this issue in *Lamar v. United*

*States*, 240 U.S. 60 (1916).  As Justice Holmes there explained:

> [N]othing can be clearer than that the district court, which has jurisdiction of all
> crimes cognizable under the authority of the United States, acts equally within its
> jurisdiction whether it decides a man to be guilty or innocent under the criminal
> law, and whether its decision is right or wrong.  The objection that the indictment

does not charge a crime against the United States goes only to the merits of the case.

*Id.* at 64–65 (internal citations omitted).  The Supreme Court reaffirmed this principle in *Cotton*, where it held "that defects in an indictment do not deprive a court of its power to adjudicate a case."  535 U.S. at 631.  Instead, as *Cotton* explained, such defects are, when raised for the first time after trial, simply reviewed under the rubric of plain error.  And here, on collateral review, where his burden is more difficult to satisfy, *see Frady*, 456 U.S. at 166, the defendant cannot show prejudice from any purported defect in the indictment given the strong evidence about his knowledge of his felon status.

As the Fourth Circuit noted in a subsequent case, "[s]ubject-matter jurisdiction (in the sense of judicial power) over federal criminal prosecutions is conferred on district courts by 18 U.S.C. § 3231."  *United States v. Hartwell*, 448 F.3d 707, 716 (4th Cir. 2006).  And indeed, several courts have concluded that the omission of an allegation of knowledge of status in an indictment is not a defect requiring *vacatur* of a conviction.  *See United States v. Moore*, 954 F.3d 1322, 1336 (11th Cir. 2020) ("[T]he law is clear: the omission of an element in an indictment does not deprive the district court of subject matter jurisdiction."); *United States v. Balde*, 943 F.3d 73, 91 (2d Cir. 2019) (holding that an indictment being defective under *Rehaif* "does not mean that the indictment fails to allege a federal offense in the sense that would speak to the district court's power to hear the case.").  This Court should do the same.

**VI.    Even if the Court were to grant the defendant's *Rehaif* claim, the appropriate remedy is not a judgment of acquittal.**

Under 28 U.S.C. § 2255, when a district court concludes that habeas relief is appropriate, "the court shall vacate and set the judgment aside and shall [i] discharge the prisoner [ii] or resentence him [iii] or grant a new trial [iv] or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b) (bracketed text added).  In the words of the Fourth Circuit, a grant of habeas

relief thus necessarily results in "one of the following:  (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence."  *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007).  A district court acts within its discretion in determining "the form of relief [it] awards to a successful § 2255 petitioner."  *Id.* at 667 (citing *United States v. Torres-Otero*, 232 F.3d 24, 29–30 (1st Cir. 2000); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)).  Irrespective of the remedy selected, "the goal of § 2255 review is to place the defendant 'in exactly the same position he would have been' had there been no error in the first instance."  *Id.* at 665 (quoting *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir. 1996)).

Because the defendant attacks the validity of his plea, the grant of habeas relief would not result in a judgment of acquittal but rather *vacatur* of the plea.  Generally speaking, the defendant would then have the right to plead anew or go to trial.  *See, e.g.*, *United States v. Carr*, 271 F.3d 172, 180 (4th Cir. 2001).  But here, the defendant served a 96-month sentence on his § 922 conviction, and he is still serving a 600-month sentence on his later drug, murder, and firearm convictions from December 2007.  (Case No. 3:06-cr-00387, ECF No. 79.)  Accordingly, if the Court were to grant habeas relief, the government has no objection to the Court simply vacating the felon-in-possession conviction, entering a corrected judgment, and returning the $100 special assessment.

## VII.  The defendant's ineffective-assistance claim is unavailing.

The defendant also brings a claim of ineffective assistance of counsel, asserting that his trial lawyer did not hold the government to its plea bargain and otherwise had a conflict of interest.  (ECF No. 32 at 8; ECF No. 33 at 3–4.)  There are several problems with this claim.

First, the defendant has not demonstrated that his claim is timely.  Under 28 U.S.C. § 2255(f)(1), the default rule is that a habeas petition must be filed within one year of a

conviction becoming final.  Here, the conviction became final when the defendant's time to file a direct appeal expired in 2007, over ten years ago.  *Cf. Clay v. United States*, 537 U.S. 522, 527 (2003).  To be sure, § 2255(f)(4) states that, if the defendant's timeliness argument depends on newly discovered facts, the one-year deadline restarts on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." But here, the defendant just asserts that he "was not aware of the [conflict] issue at the time of conviction or appeal."  (ECF No. 32 at 9.)  But he alleges no specific facts about *when* he came to learn the new information underlying his claim or how he exercised due diligence to discover it.  "[T]he petitioner bears the burden of proving that he exercised due diligence."  *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006); *accord Johnson v. United States*, 457 F. App'x 462, 468 (6th Cir. 2012) (applying this rule to a petition under § 2255).  Here, the defendant has failed to meet that burden.

In any event, the defendant's claim fails on the merits.  To be successful on an ineffective assistance of counsel claim, a defendant generally must show that his counsel's actions meet the two-prong test announced in *Strickland v. Washington*. 466 U.S. 668 (1984).  First, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Bacon v. Lee,* 225 F.3d 470, 478 (4th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688).  This is a high bar, as the defense counsel is entitled to a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (citing *Strickland*, 466 U.S. at 689).  Second, a defendant must demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Bacon*, 225 F.3d at 478 (citing *Strickland*, 466 U.S. at 694).  The burden is on the defendant to "identify acts or omissions of counsel" that are alleged to be unreasonable.  *Strickland*. 466 U.S. at 690.  A

reviewing court must then determine whether "in light of all the circumstances, the identified

acts or omissions were outside the wide range of professionally competent assistance." *Id.*

The prejudice standard is different in the case of an alleged conflict of interest. In that

instance, a "lawyer's 'concurrent representation' of multiple clients … raises a 'high probability

of prejudice.'" *United States v. Dehlinger*, 740 F.3d 315, 321–22 (4th Cir. 2014) (quoting

*Mickens v. Taylor*, 535 U.S. 162, 175, 122 (2002)). "Accordingly, the Supreme Court has held

that in concurrent representation cases, a defendant can establish a Sixth Amendment violation

by 'showing ... defective performance, but not requiring in addition (as *Strickland* does in other

ineffectiveness-of-counsel cases), a showing of probable effect upon the outcome of trial.'" *Id.*

(quoting *Mickens*, 535 U.S. at 174). "In order to establish constitutionally deficient performance

on the basis of an alleged conflict of interest, a defendant … must establish that (1) 'an actual

conflict of interest' (2) 'adversely affected his lawyer's performance.'" *Id.* at 322 (quoting

*Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "An actual conflict, which requires a defendant to

show that his counsel 'actively represented conflicting interests,' is the 'constitutional predicate'

for an ineffective assistance claim." *Id.* (quoting *Cuyler*, 446 U.S. at 350). The mere probability

of a conflict is insufficient.

Finally, to show that a purported conflict adversely affected a lawyer's performance, a

defendant must satisfy a three-part test:

> First, the [defendant] must identify a plausible alternative defense strategy or tactic
> that his defense counsel might have pursued. Second, the [defendant] must show
> that the alternative strategy or tactic was objectively reasonable under the facts of
> the case known to the attorney at the time of the attorney's tactical decision....
> Finally, the [defendant] must establish that the defense counsel's failure to pursue
> that strategy or tactic was linked to the actual conflict.

*Id.* (quoting *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001) (en banc)).

The defendant cannot satisfy these standards. Even assuming that his lawyer actually did

simultaneously represent him and another witness, Van Faggins, who planned to testify against

24

him (ECF No. 33 at 3), he has not shown that any purported conflict adversely affected his lawyer's performance.  Instead, he faults his attorney for failing to argue that the government breached his plea agreement by not seeking a later reduction in his sentence.  (ECF No. 33 at 3–4.)  But, as a general rule, any decision about whether to seek a reduction in sentence is discretionary.  Indeed, courts consistently find that the government's decision not to seek a reduction is "properly" within its "discretion" unless a plea agreement expressly directs otherwise.  *See, e.g.*, *United States v. Butler*, 272 F.3d 683, 686 (4th Cir. 2001).  Provisions like Rule 35(b) give the government "a power, not a duty, to file a motion [for modification of sentence] when a defendant has substantially assisted."  *Wade v. United States*, 504 U.S. 181, 185 (1992).[2]

Thus, both for timeliness reasons and on the merits, the defendant's ineffectiveness claim is unavailing.

### Conclusion

The defendant can make neither the actual-innocence nor cause-and-prejudice showing necessary to overcome his procedural default.  The Fourth Circuit's opinion in *Gary*, which addressed a case on direct appeal, does not excuse the defendant from satisfying these requirements on collateral review.  Moreover, the defendant's ineffectiveness claim appears to be untimely and is otherwise without merit.  The Court should therefore deny his habeas petition.

---

[2] The government is attempting to obtain a copy of the defendant's plea agreement.  If the plea agreement in fact obligated the government to file a sentence-reduction motion, the government will promptly notify the Court.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


By: _____/s/_____
David M. Coleman
Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Office:   (757) 591-4028
Fax:      (757) 591-0866
Email:    mack.coleman@usdoj.gov

**Roseboro Notice**

Pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K), defendant is notified and warned of the following:

1.      The government's response in opposition to defendant's habeas petition alleges that defendant's § 2255 motion is legally and factually deficient.

2.      The Court can dismiss this action on the basis of the government's response if the defendant does not file a reply.  The defendant is entitled to file a legal brief in opposition to the one filed by the government.  Such a brief must be filed within 21 days of the government's response.

3.      If defendant disagrees with any facts stated by the government, defendant must identify all facts with which defendant disagrees and must set forth defendant's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that is signed under penalty of perjury).

**Certificate of Service**

I hereby certify that on August 14, 2020, I served the foregoing by U.S. mail to:

       Lamont E. McCord
       Reg. No. 33071-183
       P.O. Box 340
       Salters, S.C. 29590

By:            /s/              
             David M. Coleman
             Assistant United States Attorney
             Eastern District of Virginia
             Fountain Plaza Three, Suite 300
             721 Lakefront Commons
             Newport News, Virginia 23606
             Office:   (757) 591-4028
             Fax:      (757) 591-0866
             Email:    mack.coleman@usdoj.gov