IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.  Criminal No. **3:06CR264**

**LAMONT E. McCORD,**

    Petitioner.

## MEMORANDUM OPINION

Lamont E. McCord, a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 32).[1] The Government has filed a Response. (ECF No. 41.) McCord has filed a Reply. (ECF No. 43.) For the reasons set forth below, the § 2255 Motion will be DENIED in part. Claims One and Two (b) will be DISMISSED. The Court will order McCord to file a further response with respect Claim Two (a).

### I.    PROCEDURAL HISTORY

After the Court denied a motion to suppress evidence recovered during a search and seizure of McCord, on September 21, 2006, McCord pled guilty to one count of possession of a firearm by a convicted felon (Count One). (ECF Nos. 14, 17; ECF No. 19, at 1.) In the Statement of Facts filed in conjunction with the Plea Agreement, McCord acknowledged that the facts contained in Count One of the Indictment and the following facts were true and that the Government could have proven them beyond a reasonable doubt had the matter gone to trial:

> 1. On July 20, 2006, as part of the United States Department of Justice's (DOJ)/ Alcohol, Tobacco, Firearms and Explosives' (ATF) Violent Crime Impact Team (VCIT) initiative, ATF Task Force Officer Luther Burdette, III, in

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spacing, and omits the emphasis in quotations from McCord's submissions.

conjunction with other members of the Richmond City Police Department's Narcotics Division, and other VCIT members conducted interviews regarding violent street robberies, illegal firearm possession and the illegal trafficking of narcotics, in a specific section of South Richmond.

2. During these interviews, one particular individual was described as "MONT." "MONT" was related to be a regular trafficker of cocaine base, whose "career" was noted to be the "robbing" of persons within the neighborhood. In addition, the cooperator told TFO Burdette and others that "MONT" and his associates have previously used firearms in the commission of the above-noted offenses.

3. "MONT" was further described as being part of a group of three individuals, who on this same date (July 20, 2006), included one individual who was wearing an "all-white, "nice," "ENYCE" outfit. Subsequent to these interviews, Burdette, in conjunction with Richmond Police Detectives Kevin Mills and Kevin Hiner spotted an individual wearing an all white "ENYCE" outfit walking east on Hull Street, from Broad Rock Road. This individual then walked into the C&C Quick Stop convenience store.

4. The three law enforcement officers entered the store and observed the individual, later identified as McCORD, standing in line, near the cash register. The three officers were all in plain clothes but with badges displayed. When McCORD began to leave, law enforcement personnel engaged him in a consensual encounter and conversation. Burdette positioned himself such that he was not between the defendant and the door and at no time was McCORD surrounded. The conversation occurred toward the back of the store as McCORD propped himself up on a cooler/refrigeration unit. During this time, Burdette asked McCORD if he was in possession of any "burners," a street slang for firearms.

5. McCORD notably hesitated before responding "no." Burdette observed the defendant's demeanor and concluded, based on his training and experience, that he was under the influence of heroin as his speech was slow and his eyes partially closed during the conversation. McCORD then began a self-check of his pockets, in an apparent attempt to verify that he had no firearm to the law enforcement officers. In doing so, McCORD turned his right side, away from Burdette, and addressed another officer who was not engaged in the conversation. During this time the third officer was obtaining the defendant's criminal history and warrant based on information provided by McCORD earlier in the conversation. Burdette, in noting the irregularities of the subject's behavior, then advised McCORD that he (Burdette) would conduct a pat down for weapons. At no point did McCORD object, ask to leave or in any way protest.

6. Burdette immediately found a firearm in McCORD's right-side waist band. This firearm was found to be loaded, with no round of ammunition in the chamber. The recovered firearm was noted to be a Sturm Ruger & Company, Model P95DC, 9mm semiautomatic pistol, serial #31405216. Subsequent investigation revealed that McCORD was wanted in the City of Richmond on a warrant for Domestic Assault and Battery. It was further confirmed that this warrant was on file with the Richmond City Police Department. McCORD was arrested on the scene.

> 7. A criminal record check confirmed that McCORD [had] several felony convictions punishable by imprisonment of one year or more, to include a June 16, 2005 conviction for of [sic] Possession of Cocaine with the Intent to Distribute in the Circuit [C]ourt of the City of Richmond.
> 8. The Sturm Ruger & Company, Model P95DC, 9mm semiautomatic pistol, serial #31405216 was possessed in and affected interstate commerce in that it was manufactured outside the Commonwealth of Virginia and traveled in interstate commerce prior to July 20, 2006.
> 9. Subsequent to his arrest, McCORD was found in possession and under the influence of Percocet, for which he did not have a valid prescription.
> ....
> 11.   At all times relevant to Count One of the Information and the underlying facts, the defendant, LAMONT E. McCORD, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm, to wit:  a Sturm Ruger & Company, Model P95DC, 9 mm semiautomatic pistol, serial #31405216, in and affecting interstate and foreign commerce.

(ECF No. 20, at 1–4.) On February 6, 2007, the Court sentenced McCord to ninety-six months of incarceration. (ECF No. 25.) McCord did not appeal.

On June 5, 2020, McCord filed the present § 2255 Motion.[2] In his § 2255 Motion, McCord raises the following claims for relief:

| | |
|---|---|
| Claim One: | "Unconstitutional sentence/conviction under 922(g)(1)" and *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and because the Government failed to "prove[] that I knew I possessed a firearm as charged" and "that I knew I belonged to a class of persons barred from possessing a firearm." (ECF No. 32, at 5.)[3] |
| Claim Two: | "Ineffective assistance of counsel/conflict of interest." (*Id.* at 8.)<br>(a) "My attorney was representing me and assisting [the] Government helping them to get a [witness] out who was testifying against me. My attorney was representing me and [the witness] at the same time who was assisting the Government." (*Id.*)<br>(b) The Government breached the Plea Agreement and counsel rendered ineffective assistance when the Government failed to move for a Federal |

---

[2] McCord placed the § 2255 Motion in the prison mailing system on that date. (ECF No. 32, at 12.) The Court deems June 5, 2020 as the filed date. *Cf. Houston v. Lack*, 487 U.S. 266, 276 (1988).

[3] Grounds One, Two, and Three of the § 2255 Motion all raise a similar *Rehaif* challenge to his § 922(g) conviction. (*See* ECF No. 32, at 4–7.) The Court has combined them into one claim, Claim One.

3

    Rule of Criminal Procedure 35 Motion despite promising to make such a motion. (ECF No. 33, at 1–2.)

After the Government filed its Response arguing that Claim One is procedurally defaulted, and Claim Two is untimely, McCord filed a Reply. (ECF No 43.) Buried in the Reply, McCord states: "I would like to withdraw my *Rehaif* argument [Claim One] but move forward with my ineffective counsel breach of plea argument." (*Id.* at 3.) The Government has already fully briefed the *Rehaif* claim, and it is clearly defaulted and barred from review. Therefore, the Court will still address Claim One here.

As discussed below, Claim One is procedurally defaulted and barred from review. Claim Two (b) is untimely and barred by the statute of limitations. The Court will order a further response from McCord with respect to Claim Two (b) because it makes little sense in its current state.

## II. STATUTE OF LIMITATIONS ANALYSIS

### A. Applicable Law

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a § 2255 Motion. Specifically, 28 U.S.C. § 2255(f) now reads:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

4

28 U.S.C. § 2255(f).

Because McCord did not appeal, under 28 U.S.C. § 2255(f)(1), his conviction became final on Friday, February 16, 2007, the last date to note an appeal. *See Arnette v. United States*, Nos. 4:01CR16, 4:04CV122, 2005 WL 1026711, at *4 (E.D. Va. May 2, 2005) (citing *Clay v. United States*, 537 U.S. 522, 527 (2003)); Fed. R. App. P. 4(b)(1)(A) (2007) (requiring defendant to file an appeal within ten days of the entry of judgment). Hence, McCord had until Monday, February 18, 2008, to file any motion under 28 U.S.C. § 2255. Because McCord did not file his § 2255 Motion until June 5, 2020, more than twelve years after that date, the § 2255 Motion is untimely under 28 U.S.C. § 2255(f)(1). Thus, his § 2255 Motion is untimely unless he demonstrates some basis for a belated commencement of the limitation period or some equitable basis for avoiding the limitation period.

With respect to Claim One, the Government concedes that *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the case that the claim is based upon, applies retroactively to cases on collateral review, and therefore, McCord's claim is timely under § 2255(f)(3). (ECF No. 41, at 4.) For Claim Two, McCord suggests that he is entitled to a belated commencement of the limitations period under § 2255(f)(4). (ECF No. 43, at 1.) The Court turns to Claim Two first.

### B. Belated Commencement under § 2255(f)(4): Claim Two (b)

Whether a petitioner has exercised due diligence to warrant a belated commencement of the limitation period pursuant to 28 U.S.C. § 2255(f)(4) is a fact-specific inquiry unique to each case. *See Wims v. United States*, 225 F.3d 186, 190–91 (2d Cir. 2000). A petitioner bears the burden to prove that he or she exercised due diligence. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). Due diligence "at least require[s] that a prisoner make *reasonable* efforts to discover the facts supporting his claims." *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008)

(citing *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)). A habeas applicant who "merely alleges that [he or she] did not actually know the facts underlying his or her claim does not" thereby demonstrate due diligence. *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997). Rather, to obtain a belated commencement of the limitation period, the applicant must explain why a reasonable investigation would not have unearthed the facts prior to the date on which his conviction became final. *See id.* at 1540–41 (rejecting petitioner's assertion that he could not have discovered his new *Brady* claim prior to filing his first § 2254 petition). Moreover, in evaluating a petitioner's diligence, the Court must be mindful that the "statute's clear policy calls for promptness." *Johnson v. United States*, 544 U.S. 295, 311 (2005).

In Claim Two (b), McCord suggests that the Government breached the Plea Agreement and counsel rendered ineffective assistance when the Government failed to file a motion under Federal Rule of Criminal Procedure 35(b) despite allegedly promising to do so. (ECF No. 33, at 1–2.) McCord seemingly suggests that his attorney, Mr. Horace Hunter, was responsible for ensuring that the Government moved for a reduction in sentence under Rule 35(b). (*See* ECF No. 43, at 1–2.) McCord claims that "for several years [counsel] stated Mr. Chuck James assured me he will be filing the motion." (*Id.* at 1.) McCord was clearly aware of the facts underlying this claim within a year of his conviction becoming final or, at the very least, well before June 5, 2020, when he filed his § 2255 Motion. McCord offers no persuasive argument about why this claim should be considered timely filed at this late juncture. Simply put, McCord was not diligent in

pursuing this claim and he fails to demonstrate entitlement to a belated commencement under § 2255(f)(4). Therefore, Claim Two (b) is untimely and will be DISMISSED.[4]

### C. What Is McCord Alleging in Claim Two (a)?

In Claim Two (a), McCord states: "Ineffective assistance of counsel/conflict of interest. My attorney was representing me and assisting [the] Government helping them to get a Van Faggins [a witness] out who was testifying against me. My attorney was representing me and Van Faggins [the witness] at the same time who was assisting the Government." (ECF No. 32, at 8.) With respect to the timeliness of this claim, in his Affidavit of Truth, McCord states:

> I later discovered that my attorney Mr. Horace Hunter Esq. was aiding the Government representing a Mr. Van Faggins who was testifying against me. AUSA Mr. Peter Duffey sent my attorney two letters (that I'm aware of) having him to get Van Faggins out of jail for child support so that he could testify against me. . . .
> My attorney Mr. Horace Hunter
> 1.   Represented me and Van Faggins, a government witness against me, at the same time.
> 2.   He never filed required motions against Government in my opinion because of this conflict of interest.
> I wrote and no action was taken by Mr. Hunter. He derelicted his duty to please the Government.

---

[4] This claim also lacks merit for several reasons. The Government was under no obligation to file a Rule 35(b) Motion on McCord's behalf in this case, and its failure to do so is not a breach of the Plea Agreement. *See United States v. Hartwell*, 448 F.3d 707, 718 (4th Cir. 2010). To the contrary, in the Plea Agreement, McCord expressly agreed that "the United States reserves the right to seek any departure from the applicable sentencing guidelines, . . . or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, if, in its sole discretion, the United States determines that such a departure of reduction of sentence is appropriate. The defendant waives any right to challenge the decision of the United States to make such a motion or the extent of representation made by the United States." (ECF No. 19 ¶ 15.) Moreover, McCord received a large sentence reduction for his substantial assistance to the Government in a case that was nearly contemporaneous with this criminal case. The Government filed a Rule 35(b) Motion on behalf of McCord in *United States v. McCord*, No. 3:06CR387 (E.D. Va.), a case in which McCord was indicted after he pled guilty in this case. However, any assistance to the Government would have been provided by McCord during the same time period. The Court reduced his 540-month sentence to 324 months based on his substantial assistance. McCord fails to explain why he should receive any further reduction when his assistance was already considered, albeit in a different case.

7

(ECF No. 33, at 3–4.) McCord does not provide the date of when he "later discovered" the information about the alleged conflict. In his Reply, McCord suggests that he did not know about this alleged conflict until he "wrote [the] attorney that represented me on the murder and drug conspiracy case[5] for my files. Mr. Hunter withdrew from my case sighting a conflict of interest as the reason, January 18, 2007.[6] . . . I received this file April 27, 2020 from Mr. Jeffrey Everhart, Esq. so under 2255(f)(4) this is newly discovered evidence." (ECF No. 43, at 1.)

As a preliminary matter, McCord's argument for a belated commencement of the limitation period make little sense. The Court fails to discern, and McCord fails to explain, how case files from a separate drug and gun case, in which Mr. Hunter was not representing McCord, bear on Mr. Hunter's representation of McCord in this case. McCord does not explain why information pertaining to his counsel in this case, Mr. Hunter, would have been included in that case file. It is also unclear the precise information McCord learned about Mr. Hunter's alleged conflict of interest from the case file he received from Mr. Everhart in April 2020, and what information McCord may have already known about the alleged conflict before he received the case file. The Court also fails to discern, and McCord fails to explain, why, through due diligence, he could not have discovered the facts underlying this claim before April 2020.

---

[5] On December 18, 2007, in this Court, McCord was sentenced to 360 months for conspiracy to distribute cocaine hydrochloride, heroin, and crack cocaine; 180 months for use and carry of a firearm during a drug trafficking crime causing death, to be served consecutively; and 240 months to be served concurrently for conspiracy to use and carry firearms. *United States v. McCord*, No. 3:06CR387 (E.D. Va. Dec. 18, 2007).

[6] Mr. Hunter was clearly representing McCord as of January 18, 2007, as the sentencing occurred on February 6, 2007, so any suggestion that Mr. Hunter withdrew from this case on that date citing a conflict is incorrect.

8

The details surrounding the underlying claim of a conflict of interest are even less developed.[7] The Sixth Amendment guarantee of effective assistance of counsel "requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991). McCord must show that "(1) petitioner's lawyer operated under a "conflict of interest" and (2) such conflict "adversely affected his lawyer's performance." *United States v. Nicholson*, 611 F.3d 191, 205 (4th Cir. 2020) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). At this juncture, although the Court believes that McCord intends to argue that counsel suffered from a conflict of interest while representing McCord, McCord fails to allege sufficient facts to state a claim for relief. It is unclear from McCord's submissions when Mr. Hunter represented the potential witness, Van Faggins, in what capacity, and in what court. It is also unclear whether any representation was prior to the entry of the Judgment on February 6, 2007. From the tenor of McCord's submissions, and his letter in April 2020 to counsel, it appears that he believes that Mr. Hunter was still actively representing him from the date of his Judgment

---

[7] In his Reply, McCord further provides: "I never agreed to Mr. Hunter representing myself and Van Faggins. I read a letter from AUSA Mr. Peter Duffey informing Mr. Hunter to do what's possible to have Van Faggins released to testify in his case, which was against me." (ECF No. 43, at 2.) A letter from Mr. Hunter to McCord, dated April 16, 2020, also provides:

> I am writing in response to your letter dated April 9, 2020. I actually have a decent recollection of your case even thought I have literally represented thousands of people since then. It's not every day that I represent someone I [k]new as a child. I may not remember every detail about your case but I know that I did not sell you out over a child support client. I don't even remember the person you said [I] represented. Also, at the time I represented you on the drug charge, I had no idea you were involved in a homicide. I did follow-up several times with Chuck James, the A.U.S.A on your case, about the Rule 35 motion and he indicated to me that it would be part of the homicide, and, as far as I know it was.

(ECF No. 43–1, at 1.) Mr. Hunter's letter refers to representing McCord for a "drug charge;" however, in this case McCord was only charged with a § 922(g) firearm charge. Thus, this letter adds even more confusion to an already confusing set of facts.

on February 6, 2007 through April 2020. That is not is not the case as McCord's conviction became final on February 20, 2007.[8] Finally, McCord fails to allege facts that would indicate that Mr. Hunter's representation of Van Faggins adversely affected Mr. Hunter's representation of McCord.

In order to assess both the timeliness of and the merits of Claim Two (a), the Court needs further factual information from McCord. Accordingly, McCord will be directed to submit a sworn statement, within thirty (30) days, that clarifies his claim and addresses the following:

1. On what date did McCord learn that Mr. Hunter represented Van Faggins? How did McCord learn that Mr. Hunter represented Van Faggins?

2. In what capacity did Mr. Hunter represent Van Faggins? On what date did Mr. Hunter represent Van Faggins and in what court?

3. What testimony would Van Faggins have proffered that would incriminate McCord with respect to this § 922(g) charge in this case?

4. Was Van Faggins going to testify against McCord in this case in which he was only convicted of a § 922(g) violation, or was Van Faggins going to testify in a case where Mr. Hunter was not representing McCord—namely in *McCord*, No. 3:06CR287.

5. How did Mr. Hunter's representation of Van Faggins adversely affect his representation of McCord prior to the entry of the Judgment in this case on February 6, 2007?

McCord indicates that he learned of this alleged conflict of Mr. Hunter through his case file in the case *McCord*, No. 3:06CR287. McCord must file with the Court any correspondence

---

[8] McCord states that he "wrote my lawyer, Mr. Horace Hunter, Esq. about an appeal due to the breach of plea by the Government, the appeal due to Supreme Court *Rehaif* case and representation of me and someone testifying against me at the same time." (ECF No. 33, at 2.) This letter was written in April 9, 2020. (ECF No. 43-1, at 1.) To the extent that McCord faults counsel for his failure to take certain actions in this closed criminal case, he fails to state a claim for relief because McCord is not entitled to the effective assistance of counsel at this juncture. *Cf. Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citations omitted) (explaining that there is no right to counsel in discretionary appeals or in "attacking a conviction that has long since become final").

contained in the file or notes of counsel that was in this file that he relies upon in his § 2255 Motion to support Claim Two (a).

McCord's failure to comply with the above directives **will result in summary dismissal** of the action with respect to Claim Two (a). *See* Fed. R. Civ. P. 41(b).

The Government, understandably, did not obtain an affidavit from former defense counsel based on McCord's vague, unsupported, allegations in his § 2255 Motion. Nevertheless, the Court finds it necessary to expand the record to include the following:

1. Within thirty (30) days of the filing of McCord's submissions, McCord's former counsel, Horace Hunter, will be directed to provide the Government with a sworn statement regarding McCord's allegations of a conflict.

2. Within fourteen (14) days of the filing of the above from Mr. Hunter, the Government will be directed to file its response, UNDER SEAL, if necessary, including all information and documents provided by Mr. Hunter and any correspondence or notes in the Government's file that bear on this claim. The Government shall properly serve McCord with the same.

### III. PROCEDURAL DEFAULT

#### A. Alleged Error under *Rehaif* (Claim One)

The Government concedes that *Rehaif* applies retroactively to cases on collateral review, but argues that, McCord procedurally defaulted any challenge to his conviction based on *Rehaif*. (ECF No. 41, at 4.)[9] As discussed below, Claim One is defaulted and barred from review here.

Under 18 U.S.C. § 922(g)(1), it is unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. A separate provision, 18 U.S.C. § 924(a)(2), requires that anyone who "knowingly violates"

---

[9] The Fourth Circuit has not addressed the retroactivity of *Rehaif*. At least two circuit courts have found that *Rehaif* is merely a case of statutory interpretation, and it did not establish a new rule of constitutional law. *See Khamisi-El v. United States*, 800 F. App'x 344, 349 (6th Cir. 2020); *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019). Nevertheless, because the Government concedes its retroactivity, for the purposes of this opinion, the Court will accept that *Rehaif* applies retroactively to cases on collateral review.

11

§ 922(g)(1) shall be fined or imprisoned for up to ten years. In *Rehaif*, the Supreme Court determined that § 922(g) does not criminalize a defendant's "innocent mistake" and therefore, a conviction under § 922(g) requires "knowledge of [the] status" that renders firearm possession unlawful. 139 S. Ct. 2197. Accordingly, *Rehaif* held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm *and that he knew* he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200 (emphasis added).[10]

Relying on this holding, McCord contends that his plea colloquy was defective because he was not informed that the Government had to prove knowledge of prohibited status. McCord apparently suggests that, because he was unaware of this element of the § 922(g) offense, his plea

---

[10] In *Rehaif*, a jury convicted the defendant of being an alien unlawfully in the United States in possession of firearms in violation of § 924(g)(5) and § 924(a)(2). 139 S. Ct. at 2194. As explained by the United States Supreme Court:

> Petitioner Hamid Rehaif entered the United States on a nonimmigrant student visa to attend university. After he received poor grades, the university dismissed him and told him that his "'immigration status'" would be terminated unless he transferred to a different university or left the country. Rehaif did neither.
> Rehaif subsequently visited a firing range, where he shot two firearms. The Government learned about his target practice and prosecuted him for possessing firearms as an alien unlawfully in the United States . . . .

*Id.* at 2194 (internal citations omitted). During his trial, Rehaif objected to the jury instruction "that the 'United States is not required to prove' that Rehaif 'knew he was illegally or unlawfully in the United States,'" at the time he possessed the firearm. *Id.* (citation omitted). The trial court overruled the objection, the jury found him guilty, and Rehaif was sentenced to 18 months of incarceration. *Id.* The Eleventh Circuit affirmed his conviction and sentence. *Id.* at 2195. The United States Supreme Court reversed, holding: "To convict a defendant, the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

12

was not knowing and voluntary and his conviction must be vacated.[11] However, as discussed below, Claim One is procedurally defaulted, and barred from review here.

### B. McCord Fails to Demonstrate Actual Prejudice or Actual Innocence

McCord clearly did not raise his *Rehaif* claim during his criminal proceedings in this Court or on direct review. The Government correctly asserts that, absent a showing of cause and prejudice or actual innocence, Claim One is barred from review here because McCord could have raised, but did not raise, this claim on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (internal quotation marks omitted) (citation omitted) (explaining that a petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal."). The Court need not determine whether McCord has shown cause, because he clearly suffered no actual prejudice. *See United States v. Frady*, 456 U.S. 152, 167 (1982).

---

[11] McCord does not specifically argue that *Rehaif* requires that the Government must also prove that he knew his conviction for a crime punishable by a term of imprisonment exceeding one year accorded him a status barring him from legally possessing a firearm. However, to the extent that he had, that contention lacks merit. *Rehaif* does not require the Government to prove that McCord knew his possession of a firearm was unlawful in addition to proving he "knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. 2194. To the contrary, "the scope of a defendant's knowledge as required by *Rehaif* does not extend beyond the defendant's relevant status (that he was a felon . . . )." *United States v. Jackson*, No. 3:17–810–CMC, 2021 WL 694848, at *8 (D.S.C. Feb. 23, 2021) (quoting *Rehaif*, 139 S. Ct. at 2194). Although the Fourth Circuit has not weighed in on this argument, four circuit courts have agreed that after *Rehaif*, "the Government must prove only that [the defendant] knew, at the time he possessed the firearm, that he belonged to one of the prohibited status groups enumerated in § 922(g)," *United States v. Singh*, 979 F.3d 697, 728 (9th Cir. 2020), not that "he knew his status prohibited him from owning a firearm," *id.* at 727; *see also United States v. Maez*, 960 F.3d 949, 945–55 (7th Cir. 2020) *petition for cert. filed*, Nos. 20–6129, 20–6226, 20–6227 (U.S. Oct. 19, 2020 & Oct. 28, 2020); *United States v. Robinson*, 982 F.3d 1181, 1187 (8th Cir. 2020); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2572 (2020); 140 S. Ct. 814 (2020).

In order to demonstrate prejudice, McCord must show "a reasonable probability that, but for [the alleged] errors, he would have not pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (explaining that defendant can only establish a Rule 11 error affected his substantial rights by "show[ing] a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea"). Notably, McCord does not argue that, but for the *Rehaif* error, he would have pled not guilty and insisted on proceeding to trial. For this reason alone, McCord has failed to meet his burden of establishing actual prejudice. *See Greer v. United States*, 141 S. Ct. 2090, 2097 (2021).

Moreover, the undisputed evidence establishes that the Government would have easily demonstrated that McCord was aware of his prohibited status. As the Court stated in *Rehaif*, the Government's obligation to prove a defendant's knowledge of his status as convicted felon is hardly "burdensome," because "knowledge [of status] can be inferred from circumstantial evidence." 139 S. Ct. 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)); *see United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020) ("Demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew."), *petition for cert. filed*, No. 20–5489 (U.S. Aug. 25, 2020).

In *Rehaif*, the Supreme Court addressed "what it means for a defendant to know he has 'violate[d]' 922(g)." 139 S. Ct. 2195. The Supreme Court set forth four elements that make possession of a firearm or ammunition unlawful: "(1) a status element (in this case, [being a felon with a sentence of imprisonment of more than one year]); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or

14

ammunition')." *Id.* at 2195–96. Only element (1) is at issue here: whether McCord was aware that he was a felon with a sentence of more than a year at the time he possessed the firearm. Overwhelming evidence reflects that McCord knew of his felon status at the time of the firearm offense and the Government easily would have proven that fact if he had insisted on proceeding to trial. *Cf. Greer*, 141 S. Ct. at 2100 ("In felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon."). Namely, McCord had been convicted of multiple felonies by the Commonwealth of Virginia, including: a 1992 conviction for felony possession of cocaine, resulting in an active sentence of three years of incarceration (Presentence Report "PSR" ¶ 16); 1995 convictions for possession of cocaine and possession of cocaine with intent to distribute, resulting in a five-year sentence with all five years suspended, with the suspension later revoked (*id.* ¶ 22); and 1995 convictions in the Richmond Circuit Court for possession of cocaine with intent to distribute, possession of cocaine while simultaneously possessing a firearm, and carrying a firearm after being convicted of a felony, resulting in an active sentence of eight years of incarceration. (*Id.* ¶ 24.) McCord clearly knew that he was both a felon and that he was prohibited from possessing a firearm in 2006. Moreover, the record lacks any evidence suggesting that McCord would not have pled guilty if he had known that proof that he knew that was required.[12]

---

[12] In exchange for his guilty plea, McCord received a three-level reduction in his Offense Level for acceptance of responsibility, making his sentencing guidelines range 77 to 96 months. (PSR ¶¶ 12–13, 85) If McCord had instead proceeded to trial, he faced a statutory sentence of up to ten years of imprisonment and would have lost the benefit of that three-point reduction, resulting in sentencing guidelines range of 100 to 125 months. Thus, McCord almost certainly would have received more than the 96-month sentence imposed. Accordingly, no reasonable defendant in McCord's position would have insisted on proceeding to trial when he almost certainly would have been convicted and received a longer sentence.

Therefore, McCord cannot show any actual prejudice. This same information dispels any suggestion that McCord's actual innocence could excuse his default. Accordingly, Claim One is defaulted and will be DISMISSED.

## IV. CONCLUSION

McCord's § 2255 Motion (ECF No. 38) will be DENIED in PART. Claims One and Two (b) will be DISMISSED. The Court will order the provision of additional documents with respect to Claim Two (a) as provided in Part II.C.

An appropriate Order will accompany this Memorandum Opinion.

Date: 2 September 2021
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge